# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *ex rel.* Donna Mendez & Selina Rushing and | § | |
| Selina Rushing, Individually; | § | |
| | § | |
| | § | |
| STATE OF TEXAS *ex rel.* | § | Case No. 4:11-cv-02565 |
| Donna Mendez & Selina Rushing, | § | |
|     Plaintiffs, | § | |
| v. | § | |
| | § | |
| Doctors Hospital at Renaissance, Ltd., *et al.* | § | |
|     Defendants. | § | |
| | § | |

## DEFENDANT DR. VICTOR HADDAD'S
## MOTION TO DISMISS RELATORS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iv

I.      INTRODUCTION ................................................................................................... 1

II.     NATURE AND STAGE OF PROCEEDING .......................................................... 2

III.    FACTUAL ALLEGATIONS ................................................................................... 4

IV.     STATEMENT OF ISSUES ...................................................................................... 5

V.      STANDARD OF REVIEW ...................................................................................... 5

        A.      Rule 12(b)(6) ............................................................................................... 5

        B.      Rule 9(b) ...................................................................................................... 6

VI.     ARGUMENT ........................................................................................................... 6

        A.      The Complaint fails to state a claim for relief under the FCA and fails to
                plead fraud with particularity ..................................................................... 7

                1.      Relators have not sufficiently pleaded an AKS-based FCA claim. ............. 8

                        a.      Relators have not sufficiently pleaded that Dr. Haddad
                                provided kickbacks. ....................................................................... 8

                        b.      Relators have not sufficiently pleaded Dr. Haddad's
                                unlawful intent. ............................................................................ 11

                        c.      Relators have not sufficiently pleaded the existence of a
                                single false claim that resulted from the supposedly-induced
                                referrals. ....................................................................................... 12

                2.      Relators have not sufficiently pleaded a Stark Law-based FCA
                        claim ............................................................................................................ 14

                        a.      Relators fail to plausibly allege facts showing that
                                Dr. Haddad violated the Stark Law ............................................ 14

                        b.      Relators' Stark-predicated FCA claims are time-barred ............ 15

                3.      Relators do not plausibly allege that Dr. Haddad violated the False
                        Claims Act. .................................................................................................. 16

a.     Relators fail to sufficiently plead that Dr. Haddad "knowingly" caused the submission of false claims. .....................16

b.     Relators fails to sufficiently plead that Dr. Haddad *caused* the submission of false claims. .......................................................16

c.     Relators fail to sufficiently plead that any false claim was "material" to the Government's payment decisions. ....................17

B.     Relators Fail to Plead with Particularity Elements of a Conspiracy to Violate the FCA ...................................................................................................18

VII.     CONCLUSION ........................................................................................................19

CERTIFICATE OF SERVICE .........................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................5, 19

*United States ex rel. Bennett v. Boston Sci. Corp.*,
   2011 WL 1231577 (S.D. Tex. Mar. 31, 2011) ......................................................12

*Campbell v. City of San Antonio*,
   43 F. 3d 973 (5th Cir. 1995) .................................................................................5

*United States ex rel. Dekort v. Integrated Coast Guard Systems*,
   705 F. Supp. 2d 519 (N.D. Tex. 2010) .................................................................18

*United States ex rel. Gage v. Davis S.R. Aviation, L.L.C.*,
   623 F. App'x 622 (5th Cir. 2015) .........................................................................9

*Green v. Amerisource Bergen Corp.*,
   2017 WL 1209909 (S.D. Tex. Mar. 31, 2017) (Hoyt, J.) .....................................9

*Gregory v. Houston Indep. Sch. Dist.*,
   2016 WL 5661701 (S.D. Tex. Sept. 30, 2016) ......................................................9

*United States ex rel. Grubbs v. Kanneganti*,
   565 F.3d 180 (5th Cir. 2009) ............................................................................6, 18

*United States ex rel. Hebert v. Dizney*,
   295 F. App'x 717 (5th Cir. 2008) ......................................................................9, 13

*United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White
Health*,
   816 F. App'x 892 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 905, 208 L. Ed. 2d
   458 (2020) ..........................................................................................................6, 11

*United States ex rel. Jamison v. McKesson Corp.*,
   649 F.3d 322 (5th Cir. 2011) .................................................................................1

*United States ex rel. Jamison v. McKesson Corp.*,
   900 F. Supp. 2d 683 (N.D. Miss. 2012) ...............................................................10

iv

*United States ex rel. King v. Alcon Labs., Inc.*,
    232 F.R.D. 568 (N.D. Tex. 2005) ....................................................................12, 13

*United States ex rel. King v. Solvay S.A.*,
    823 F. Supp. 2d 472 (S.D. Tex. 2011), *vacated on other grounds*, 2012 WL
    1067228 (S.D. Tex. Mar. 28, 2012) ......................................................................19

*Klaczak v. Consol. Med. Transp.*,
    458 F. Supp. 2d 622 (N.D. Ill. 2006) ...................................................................11

*United States ex rel. Lemon v. Nurses To Go, Inc.*,
    924 F.3d 155 (5th Cir. 2019) ...............................................................................17

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
    519 F. App'x 890 (5th Cir. 2013) .........................................................................13

*United States ex rel. Parikh v. Citizens Med. Ctr.*,
    977 F. Supp. 2d 654 (S.D. Tex. 2013) *aff'd sub nom. United States ex rel.*
    *Parikh v. Brown*, 587 F. App'x 123 (5th Cir. 2014).....................................8, 11, 16

*Riley v. St. Luke's Episcopal Hosp.*,
    252 F.3d 749 (5th Cir. 2001) (Smith, J., dissenting) ...............................................1

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
    620 F.3d 465 (5th Cir. 2010) ...............................................................................19

*U.S. ex rel. Ruscher v. Omnicare, Inc.*,
    2014 WL 2618158 (S.D. Tex. June 12, 2014), on reconsideration in part 2014
    WL 4388726 (S.D. Tex. Sept. 5, 2014). ........................................................8, 12, 16

*United States ex rel. Steury v. Cardinal Health, Inc.*,
    625 F.3d 262 (5th Cir. 2010) .................................................................................7

*United States ex rel. Steury v. Cardinal Health, Inc.*,
    735 F.3d 202 (5th Cir. 2013) .................................................................................6

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) ...............................................................................13

*United States v. Abbott Labs*,
    2016 WL 80000 (N.D. Tex. Jan. 7, 2016) ............................................................17

*United States v. Catholic Health Initiatives*,
    312 F. Supp. 3d 584 (S.D. Tex. 2018), *aff'd* 792 F. App'x 296 (5th Cir. 2019) ............. *passim*

*United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*,
    848 F.3d 366 (5th Cir. 2017) ................................................................15

*Voorhees v. Kelsey-Seybold Clinic, P.A.*,
    2021 WL 742887 (S.D. Tex. Jan. 29, 2021), report and recommendation
    adopted, 2021 WL 737122 (S.D. Tex. Feb. 25, 2021)............................6

*United States ex rel. Wuestenhoefer v. Jefferson*,
    105 F. Supp. 3d 641 (N.D. Miss. 2015) ................................................17

## Rules and Statutes

31 U.S.C. § 3729(a)(1) ...........................................................................16

42 U.S.C. § 1320a–7b(b)(2) ......................................................................8

42 U.S.C. § 1395nn(i)(1)(D)(iii)–(iv) .....................................................14

42 U.S.C. § 1395nn(a)(1)(A) ...................................................................14

False Claims Act ...................................................................1, 12, 16, 18

Fed. R. Civ. P. 8(a) .........................................................................2, 6, 7

Fed. R. Civ. P. 9(b) ......................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ...............................................................5, 6, 19

# I.    INTRODUCTION

Relators' claims against Dr. Haddad rest entirely upon a case of mistaken identity.  In this nearly ten-year-old *qui tam* in which the United States and the State of Texas have twice declined to intervene,[1] Relators claim that Dr. Victor Haddad, a partner at Doctor's Hospital at Renaissance ("DHR"), is liable under the False Claims Act—*not* because of any medical treatment he provided at DHR, but because he "approved" loans to DHR physicians from Lone Star National Bank ("LSNB") (an independent bank unaffiliated with DHR), through its parent company, Lone Star National Bancshares-Texas, Inc. ("Bancshares") (with LSNB, the "Bank").  In most of their allegations, Relators have confused Dr. Victor Haddad with his son, who is also named Victor Haddad.  Dr. Victor Haddad is a physician; he was not employed by the Bank and did not approve loans.  During the relevant time frame, Mr. Victor Haddad *was* an employee of LSNB.  Relators have been furnished with documents (drivers' licenses with photographs and an LSNB employment record) indicating the difference and have yet to dismiss the claims against Dr. Haddad.[2]  In view of this improper mishmash of father and son, Relators have no viable claim against Dr. Haddad and their claims should be dismissed.

Even if the Court must accept Relators' factual misrepresentations as true, connecting Relators' threadbare allegations to a chain of events leading to the commission of healthcare fraud requires extraordinary leaps of logic that doom Relators' claims.  Relators assert—based solely on

---

[1] The Fifth Circuit has shown a healthy level of skepticism when it comes to non-intervened FCA cases. *See, e.g.*, *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 331 (5th Cir. 2011) (stating that actions against certain defendants "presumably lacked merit" due to government's decision not to intervene in said actions); *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 767 n.24 (5th Cir. 2001) (Smith, J., dissenting) (observing that "the cases in which the government declines to intervene are generally the meritless cases").

[2] *See* Exhibit A.

the fact that DHR and the Bank have investors in common, including Dr. Haddad—that loans offered by the Bank to physician customers were "indirectly" made by DHR and Dr. Haddad to induce referrals in violation of the Stark Law and the Anti-Kickback Statute ("AKS"). The *only* allegations purporting to set forth Dr. Haddad's role in this supposed scheme to defraud the federal government are that Dr. Haddad (i) "had the power to exercise a controlling influence over the management or policies of the [B]ank" and (ii) "personally participated in approving [DHR] loans and signing loan documents." Based on this unadorned (and *inaccurate*) say-so, Relators conclude that Dr. Haddad is liable under the FCA for causing the submission of federal healthcare claims rendered false by these loans. Incredibly, despite accusing Dr. Haddad of serious wrongdoing, Relators fail to allege *a single fact* that discharges their burden to plausibly allege a violation of the FCA. Relators fail to identify *any* particular loan that Dr. Haddad allegedly made or approved, a physician who received such a loan, a referral made to DHR as a result of such a loan, or a single claim that was submitted to a federal healthcare payor program rendered false or fraudulent due to such a loan; and they fail to allege *any* facts regarding Dr. Haddad's scienter, how Dr. Haddad "caused" the submission of false claims, or how any claim was material to the government's payment decisions. Because of this complete failure of pleading, Relators' claims do not meet the requirements of Rule 8(a), much less the heightened standard for particularity imposed by Rule 9(b). Whether because the claims are based on factual misrepresentations or legally fail to state a claim for relief under the FCA, the result is the same: the Court should dismiss Relators' claims with prejudice.

## II.      NATURE AND STAGE OF PROCEEDING

Relators filed this *qui tam* on July 12, 2011. Dkt. 1. The Original Complaint remained under seal while the Department of Justice, United States Attorney's Office for the Southern District of Texas, and the State of Texas (collectively, the "Government") investigated Relators'

claims.  On October 1, 2018, the United States filed a Notice of Non-Intervention, but the case was not unsealed at that time.  Dkt. 67.  In December 2020, after a lengthy and comprehensive investigation, the Government again declined to intervene and the Original Complaint was unsealed on December 17, 2020.  Dkt. 77.  On March 8, 2021, Relators filed their First Amended Complaint.  Dkt. 82 (the "Complaint").  On May 11, 2021, the State of Texas filed a Notice of Election to Decline Intervention.  Dkt. 107.

Crucially, although Dr. Haddad was named along with numerous other physicians as a defendant in the 2011 Original Complaint, Relators asserted **no** facts in that pleading concerning Dr. Haddad's role in the alleged healthcare fraud scheme against the government.  *See generally* Dkt. 1.  During the course of the Government's investigation following the filing of the Original Complaint under seal, the Bank produced more than 10,000 documents, totaling approximately 95,000 pages, including loan files and loan committee meeting minutes, in response to a subpoena from the Department of Justice.  Included in LSNB's production to the Government were some documents referencing the name of an LSNB employee, Victor Haddad (the son of Dr. Haddad).  As is typical in investigations into *qui tam* relators' claims, the Department of Justice shared with Relators documents it received pursuant to an information sharing agreement, which strictly prohibits the use of those records by Relators in this suit.  Despite that use-prohibition, Relators amended their complaint to allege for the first time that Dr. Haddad "personally participated in approving" physician loans and "signing loan documents."  Dkt. 82 ¶ 218.  This is *wrong*: Dr. Haddad was never employed by the Bank and played <u>no</u> role in approving loans or signing loan documents, and counsel for Dr. Haddad has made Relators' counsel aware of this.  Nevertheless, Relators refuse to dismiss Dr. Haddad.

### III.   FACTUAL ALLEGATIONS

Relators erroneously claim that Dr. Haddad, a DHR partner and physician, as well as an Advisory Board member and shareholder of the Bank, was the First Vice President of Lone Star National Bank and has also served on the Bank's Director's Committee.[3]  Dkt. 82 ¶ 35.  Relators are two licensed registered nurses who began working at DHR in the Rio Grande Valley in the late 2000s.  *Id.* ¶¶ 8, 11. During their employment, Relators reviewed patient charts to ensure the procedures provided were medically necessary and cost-effective. *Id.* ¶ 8. Relators allege that beginning in 2009, they discovered fraudulent medical care and fraudulent billing procedures occurring at DHR.  *Id.* ¶ 232.  Relators also allege that they witnessed or otherwise learned of unnecessary admissions hospital-wide, unnecessary medical treatment or procedures, and the fraudulent use of emergency helicopter transportation.  *See generally id.* ¶¶ 156–185.  Relators make *no* allegations regarding Dr. Haddad's provision of medical treatment at DHR, or his submission of claims to federal healthcare programs for medical services he provided.

Relators do not and cannot allege that LSNB is the only bank to have made investment loans to DHR physicians.  Instead, the crux of Relators' theory against Dr. Haddad is that, beginning in 2010, DHR and three DHR partners (Dr. Haddad, Alonzo Cantu, the Chairman of the Bank, and David Deanda, a Bank officer and shareholder) "indirectly" provided loans to physicians through the Bank, in violation of the Stark Law and AKS.  *See* Dkt. 82, ¶ 44.  According to Relators, the loans were "offered at better than market rates, and/or payments [were] not regularly demanded on the loans." *Id.* ¶¶ 218, 220.  According to Relators, Dr. Haddad "had the power to exercise a controlling influence over the management or policies of the [B]ank" and

---

[3] LSNB is a wholly owned subsidiary of Bancshares.  Any reference to a "shareholder" or "investor" in the "Bank" is a reference to such individual being a shareholder in Bancshares which, in turn, owns and operates the Bank.

"personally participated in approving such loans and signing loan documents." *Id.* ¶ 218.  Finally, Relators assert that Dr. Haddad conspired with other defendants—including DHR and the Bank— to submit claims to the Government, which were rendered false by LSNB's loans.

## IV.    STATEMENT OF ISSUES

1.    Should Relators' FCA claim against Dr. Haddad be dismissed because the Complaint's allegations of purported improper lending and renumeration fail to state a claim as required by Rule 12(b)(6), and fail to plead fraud with particularity as required by Rule 9(b)?

2.    Should Relators' FCA conspiracy claim against Dr. Haddad be dismissed because the Complaint's allegations of conspiracy fail to state a claim as required by Rule 12(b)(6), and fail to plead conspiracy with particularity as required by Rule 9(b)?

## V.    STANDARD OF REVIEW

### A.    Rule 12(b)(6)

Relators must plead enough facts to state a claim to relief that is plausible on its face. FED. R. CIV. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4]  Put another way, the plausibility standard requires "more than simply a sheer possibility that a defendant has acted unlawfully." *United States v. Catholic Health Initiatives*, 312 F. Supp. 3d 584, 594 (S.D. Tex. 2018), *aff'd* 792 F. App'x 296 (5th Cir. 2019).  Dismissal is appropriate where a "complaint lacks an allegation regarding a required element necessary to obtain relief." *Campbell v. City of San Antonio*, 43 F. 3d 973, 975 (5th Cir. 1995).

---

[4] Unless otherwise noted, this Motion adds all emphasis in quotations, and omits from quotations all alterations, citations, and internal quotation marks.

### B.    Rule 9(b)

Claims brought under the FCA must additionally meet the heightened pleading standard of Rule 9(b). *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Thus, Relators "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Rule 9(b)'s particularity requirement supplements Rule 8(a)'s demand that a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 897 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 905, 208 L. Ed. 2d 458 (2020). Thus, "[t]he failure of a plaintiff to plead in compliance with Rule 9(b) is considered a failure to state a claim under Rule 12(b)(6)." *Voorhees v. Kelsey-Seybold Clinic, P.A.*, 2021 WL 742887, at *3 (S.D. Tex. Jan. 29, 2021), *report and recommendation adopted*, 2021 WL 737122 (S.D. Tex. Feb. 25, 2021). Specifically, to survive a motion to dismiss, "it is necessary to plead with particularity the who, what, when, where and how of the falsity." *United States ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 205 (5th Cir. 2013).

## VI.    ARGUMENT[5]

Relators' farfetched theory of liability submits that Dr. Haddad, a physician at *DHR*, somehow "approved" loans made by the *Bank*, rendering claims submitted by *DHR* to the federal government false. Relators' narrative is tied together by nothing more than two factually inaccurate allegations: that Dr. Haddad personally participated in approving DHR loans and signing loan documents, and that he had the power to exercise a controlling influence over the management or policies of the Bank. Even assuming the veracity of these allegations (which the

---

[5] Dr. Haddad incorporates in full all arguments and authorities in the Motions to Dismiss filed by defendants Lone Star National Bank and Lone Star National Bancshares-Texas, Inc. (Dkt. 111) and by Doctors Hospital at Renaissance (Dkt. 106).

Bank denies), Relators fail to link these vague and wholly unremarkable "facts" to *any* wrongdoing by Dr. Haddad, let alone an FCA violation. Because Relators cannot satisfy even the threshold pleading standard of Rule 8(a), they certainly cannot satisfy their heightened burden under Rule 9(b) to plead with particularity the "who, what, when, where, and how" of a purported predicate AKS or Stark Law violation by Dr. Haddad. Similarly, Relators fail to sufficiently plead the existence of a FCA conspiracy involving Dr. Haddad. Relators' Complaint should be dismissed.

### A.    The Complaint fails to state a claim for relief under the FCA and fails to plead fraud with particularity.

Relators must plead the following elements of an FCA claim: "(1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that is presented to the Government." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 267 (5th Cir. 2010). Relators assert that Dr. Haddad caused the submission of health-care claims by DHR rendered false by physician's investment loans which purportedly violated the AKS and Stark Law. Thus, in order to satisfy the first element of their FCA claim against Dr. Haddad (a false statement or fraudulent course of conduct), Relators must plead a predicate AKS or Stark violation, and they must do so with the particularity required by Rule 9(b). They fail to do this. Relators assert no facts regarding *a single thing* that Dr. Haddad did other than their vague claim that he "had the power to exercise a controlling influence" at the Bank and "approve" loans—which are demonstrably false assertions. Even assuming the truth of these allegations, the Complaint still fails to set forth a viable AKS or Stark-predicated FCA claim against Dr. Haddad and so should be dismissed.

1.      **Relators have not sufficiently pleaded an AKS-based FCA claim.**

To plead a predicate AKS violation, Relators must allege that Dr. Haddad knowingly and willfully offered kickbacks to DHR physicians to induce them to make referrals for services to be paid by federal healthcare programs.  *See* 42 U.S.C. § 1320a–7b(b)(2); *United States ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 662–63 (S.D. Tex. 2013) *aff'd sub nom. United States ex rel. Parikh v. Brown*, 587 F. App'x 123 (5th Cir. 2014).  Further, Rule 9(b) requires Relators to "allege the particular details of a scheme to offer kickbacks in order to induce referrals . . . ." *Parikh*, 977 F. Supp. 2d at 667.  This standard obligates Relators to set forth how Dr. Haddad provided remuneration, the form of the remuneration, how and why Dr. Haddad believed the remuneration would induce referrals at DHR, and how Dr. Haddad benefited from the remuneration.  *See United States ex rel. Ruscher v. Omnicare, Inc.*, 2014 WL 2618158, at *10 (S.D. Tex. June 12, 2014), *on reconsideration in part*, 2014 WL 4388726 (S.D. Tex. Sept. 5, 2014).

a.      **Relators have not sufficiently pleaded that Dr. Haddad provided kickbacks.**

The exclusive focus of Relators' claims against Dr. Haddad are his alleged "controlling influence" over the Bank and "approval" of AKS-violating loans—there are <u>no</u> other allegations concerning Dr. Haddad's role in the supposed vast scheme to defraud federal healthcare programs. Thus, Relators seemingly should have no problem discharging their obligation to set forth at least *basic* details of the loans that Dr. Haddad allegedly approved, or information regarding the alleged controlling influence he held at the Bank.  But Relators do not ever identify any particular loan that Dr. Haddad approved, when that loan was made, to which physician that loan was issued, the terms of the loan, whether any doctors who received such loans referred patients to DHR, and whether DHR subsequently submitted claims as a result of such referrals.  Relators also do not explain how Dr. Haddad exercised his allegedly "controlling influence" at the Bank, or how that

"influence" is related to the provision of loans to DHR physicians (let alone how that "influence" is tied to DHR's submission of claims to the federal government). Instead, Relators state only that *the Bank* made some unspecified loans to some unspecified physicians at unspecified points in time "[b]eginning in 2010." This is patently inadequate to properly plead an AKS violation against Dr. Haddad. *See Gregory v. Houston Indep. Sch. Dist.*, 2016 WL 5661701, at *5 (S.D. Tex. Sept. 30, 2016) (allegation that "fraud occurred over a course of years spanning from at least 2005 to 2013" was insufficient to satisfy Rule 9(b)); *id.* ("In addressing the 'who' of the fraudulent scheme, the identity of the person making the misrepresentation must be stated in the complaint alleging violation of the FCA in order to satisfy Rule 9(b)."); *United States ex rel. Gage v. Davis S.R. Aviation, L.L.C.*, 623 F. App'x 622, 627 (5th Cir. 2015) ("Gage alleges only that defendants submitted nearly $4 million of false invoices to the government between 2009 and 2011. This range is not specific enough to comply with Rule 9(b)"); *United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722–23 (5th Cir. 2008) (allegations that defendants routinely submitted bills over the course of seven years did not "come close to satisfying" Rule 9(b)). Indeed, it is precisely these kinds of vague and nebulous claims that Rule 9(b) is intended to weed out, in significant part to protect defendants like Dr. Haddad from having their good names tarnished over baseless claims that Relators themselves cannot apparently substantiate with any *facts*. *Green v. Amerisource Bergen Corp.*, 2017 WL 1209909, at *4 (S.D. Tex. Mar. 31, 2017) (Hoyt, J.) ("Rule 9(b) has four purposes: to ensure that the defendant has sufficient information to formulate a defense by having notice of the conduct complained of; to protect defendants against frivolous suits; to eliminate fraud actions in which all the facts are learned after discovery; and to protect defendants from undeserved harm to their goodwill and reputation."). Dr. Haddad has had *no* opportunity to

formulate a defense because he lacks notice of basic details of the alleged fraudulent scheme that he is charged with executing.

Even if Relators had somehow met their burden to plead sufficient facts linking Dr. Haddad to the provision of at least one loan, they have not pled any facts showing that loan was a *kickback*—which is the central tenet of Relators' AKS-based claim. The only allegations offered to establish that the loans are kickbacks are that the loans are purportedly "offered at better than market rates, ***and/or*** payments are not regularly demanded on the loans." Dkt. 82, ¶¶ 218, 220 (emphasis added). Again, these allegations do not concern anything *Dr. Haddad* did. For instance, Relators nowhere allege that Dr. Haddad decided what rates the loans would be offered at or whether the Bank would demand payment on the loans. That is unsurprising, given that Relators allege no personal knowledge that the Bank does not "regularly demand[]" payment on the loans, or that the loans are "offered at better than market rates." Relators do not allege that they worked at the Bank, reviewed Bank documents, or spoke to DHR physicians or Bank employees about the loans. Relators provide no information about how they learned that Dr. Haddad allegedly "approved" loans or "controlled" bank policy, or about how they discovered the existence of the loans or learned of their alleged unlawful terms. Relators also provide no information on what they claim the "market rate" is, or how the loans depart from their claimed "market rate." Relators fail to provide *any* information as to how the loans depart from fair market value, such as comparing how the interest rates, repayment terms, creditworthiness requirements, collateral requirements, or other important features of the loans *compare* to loans offered by other banks or by LSNB to its other customers. Relators must do this in order to establish that the loans were kickbacks—or anything of value—under the AKS. *See United States ex rel. Jamison v. McKesson Corp.*, 900 F. Supp. 2d 683, 699 (N.D. Miss. 2012) ("In the context of the AKS, courts use

10

'fair market value' as the gauge of value when assessing the remuneration element of the offense."); *Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 678–79 (N.D. Ill. 2006) ("In the case *sub judice*, the only alleged remuneration is a 'discount' for services, which raises the critical question—a discount compared to what? . . . Relators cannot prove that the Hospital Defendants received remuneration—something of value—without comparing the contracted rates with fair market value."). Relators have not plausibly alleged the existence of a kickback under the AKS.

> **b.      Relators have not sufficiently pleaded Dr. Haddad's unlawful intent.**

Relators also fail to plausibly allege the second element of their AKS-predicate claim: that Dr. Haddad willfully paid kickbacks with the unlawful intent to induce referrals. "Willfulness . . . entails a specific intent to do something the law forbids; that is to say, a bad purpose either to disobey or disregard the law." *Catholic Health Initiatives*, 312 F. Supp. 3d at 595. Relators must plausibly allege that Dr. Haddad "approved" the loans (the alleged kickbacks) with the intent "to induce referrals from the physician investors." *Id.* at 596; *see also Parikh*, 977 F. Supp. 2d at 665 ("Case law . . . consistently treats the AKS's inducement element as an intent requirement.").

But Relators do not plead *any* facts establishing that Dr. Haddad was motivated by the unlawful purpose of inducing illegal referrals when he allegedly "approved" the loans. If Dr. Haddad's role at the Bank did, in fact, involve approving loans (and the Bank disputes this), Relators have not alleged how Dr. Haddad's approval of DHR loans was any different from *other* loans Dr. Haddad approved. Without these facts for support, Dr. Haddad's allegedly unlawful conduct—"approving" Bank loans to customers—is entirely consistent with an alternate narrative of reasonable, lawful business decision-making. *See Integra Med Analytics*, 816 F. App'x at 897 ("A claim is merely conceivable and not plausible if the facts pleaded are consistent with both the

claimed misconduct and a legal and obvious alternative explanation."); *Catholic Health Initiatives*, 312 F. Supp. 3d at 597 (drawing a distinction "between the improper intent to induce referrals prohibited by the AKS and an honest, if business-minded, desire to maintain good customer relationships").

In short, the allegations in the Complaint fail to sketch how it was that Dr. Haddad provided remuneration, the form of that remuneration, why Dr. Haddad believed that remuneration would induce referrals at DHR, and how Dr. Haddad benefited from the remuneration—all required to properly plead an AKS-predicate FCA violation. *See Ruscher*, 2014 WL 2618158, at *10.

### c.   Relators have not sufficiently pleaded the existence of a <u>single false claim</u> that resulted from the supposedly-induced referrals.

Finally, Relators fail to plead the submission of a false claim as a result of the referrals that Dr. Haddad allegedly induced by "approving" DHR loans.  "Evidence of an actual false claim is the *sine qua non* of a False Claims Act violation[,]"  *United States ex rel. Bennett v. Boston Sci. Corp.*, 2011 WL 1231577, at *2 (S.D. Tex. Mar. 31, 2011), and, thus, Relators must plausibly allege this element of their FCA claim.  *See Catholic Health Initiatives*, 312 F. Supp. 3d at 598–99; *United States ex rel. King v. Alcon Labs., Inc.*, 232 F.R.D. 568, 572 (N.D. Tex. 2005) (dismissing complaint where relator failed to "specifically identify any fraudulent claims for payment that were submitted by the defendants to the government."). To discharge this burden, Relators must either allege "the details of an actually submitted false claim," *or* allege the "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Catholic Health Initiatives*, 312 F. Supp. 3d at 598–99 (quoting *Grubbs*, 565 F.3d at 190) (dismissing AKS-based FCA claims, noting that "[i]n the absence of such details, the failure to identity an actually submitted false claim is fatal to Relators' claims").

But the Complaint does neither.  It neither sets forth "the details of an actually submitted false claim" ***nor*** provides "particular details" paired with "reliable indicia" that a claim was submitted.  Relators allege ***no*** facts—in even the broadest of terms—concerning: (a) the date of the referral, (b) the referred patient's name or other identifying information, (c) the name of the referring physician, (d) the medical treatment provided at DHR, (e) the date DHR submitted a claim for that treatment, (f) the federal healthcare program to which DHR submitted the claim, (g) the date and amount of payment that DHR received, (h) facts connecting the claim to an LSNB loan, such as whether the referring physician had an LSNB loan, and, crucially, (i) facts connecting *Dr. Haddad's* alleged "approval" of a loan to a claim for payment flowing from such a loan.

Rather than linking Dr. Haddad's alleged "approval" of DHR loans to the submission of false claims by DHR, the Complaint offers only rank conjecture that Dr. Haddad *must have* been approving loans to physicians to drive up referrals at DHR, and DHR *must have* submitted claims to federal healthcare programs based on those referrals.  This does not satisfy the pleading standard under 9(b).  *See, e.g.*, *Hebert*, 295 F. App'x at 722 (holding that relators failed to satisfy 9(b) where they made only "broad claims against numerous defendants without identifying specific actions of specific individuals at specific times that would constitute fraud against the government."); *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) (dismissing relator's claims which "fail[ed] to allege any particular details of any actual referral by a physician" to the defendant-hospital); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (affirming dismissal of relator's complaint where relator "did not identify any specific physicians who referred patients for medically unnecessary services that were submitted by defendants"); *King*, 232 F.R.D. at 572 (finding that relators failed to plead fraud with particularity because they did not identify a single person

involved in the alleged fraud, did not point to specific fraudulent claims, and did not specify a single date on which fraudulent activity occurred). Relators' AKS-predicated FCA claims against Dr. Haddad fail.

### 2. Relators have not sufficiently pleaded a Stark Law-based FCA claim.

#### a. Relators fail to plausibly allege facts showing that Dr. Haddad violated the Stark Law.

Relators' FCA claim against Dr. Haddad is also predicated on a violation of the Stark Law's "bona fide investment requirement," which prohibits, among other things, a hospital (or any owner or investor in the hospital) from directly or indirectly providing loans or financing for investment in the hospital by a physician owner or investor. 42 U.S.C. § 1395nn(i)(1)(D)(iii)–(iv). If the "bona fide investment" requirement is not met, then the hospital loses the "Whole Hospital" exception to Stark's prohibition on self-referrals,[6] and any claims submitted by the hospital to a federal healthcare program pursuant to those referrals are tainted by the Stark violation.

As an initial matter, Relators fail to plausibly allege that Dr. Haddad committed a Stark violation. Relators do not allege that he *referred* any patients to DHR based on an improper financial relationship with DHR, and do not allege that DHR *submitted* claims for payment arising from those referrals based on an improper financial relationship. Instead, Relators' novel theory of Stark liability against Dr. Haddad asserts that he "indirectly" made loans to DHR physicians through the Bank. Dkt. 82, ¶¶ 44, 218, 279. But Relators have failed to identify a single referral

---

[6] The Stark Law prohibits a *physician* from referring an individual for health services to an entity (such as a hospital) with which the physician has a financial relationship. 42 U.S.C. § 1395nn(a)(1)(A). Likewise, the *entity* may not present a claim to a federal health care program pursuant to a referral from a physician with whom it has a financial relationship. *Id*. § 1395nn(a)(1)(B). A "financial relationship" is "an ownership or investment interest in the entity" or "a compensation arrangement," subject to certain exceptions. *Id*. § 1395nn(a)(2). One is the "Whole Hospital" exception, which permits self-referrals if certain requirements are met, including the "bona fide investment" requirement. *Id*. § 1395nn(i)(1)(D); § 1395nn(d)(3).

made by a single physician who received a Bank loan, or a single claim submitted to federal health programs that violates Stark as a result of the Bank's loans.  *See supra*, pp. 13–14.  Indeed, the Complaint fails to describe how *Dr. Haddad* was "indirectly loaning" the funds to DHR physicians, despite being, according to Relators, a "First Vice President" of the Bank charged with approving loans.  Relators offer no legal authority or explanation for their allegation that a bank employee "approving" loans amounts to an indirect loan from that employee.  Relators' Stark-based FCA claim fails to satisfy the pleading standard and must be dismissed.

### b.   Relators' Stark-predicated FCA claims are time-barred.

While Relators' Stark-predicated FCA claims fail for lack of factual pleading, dismissal is separately warranted because they are time-barred.  Relators' Original Complaint was filed on July 12, 2011.  But the Affordable Care Act amendments to the Stark Law that incorporated the "bona fide investment" requirement were not effective until September 23, 2011.  Relators' Amended Complaint focuses on loans that were "outstanding" as of September 23, 2011 because that was the first date that the Bank's loans could possibly be cast as Stark violations under the "bona fide investment" requirement.  These claims do not relate back to the Original Complaint because they are premised on a change in the law which occurred *after* Relators filed their Original Complaint.  Put differently, the conduct Relators now claim is unlawful was *not* unlawful at the time they filed their Original Complaint.  *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 848 F.3d 366, 382 (5th Cir. 2017) ("[A] new claim or pleading will not relate back when it asserts a new ground for relief supported by facts that *differ in both time and type* from those the original pleading set forth.").  Thus, Relators' Stark-predicated FCA claims must fail as a matter of law.

**3.      Relators do not plausibly allege that Dr. Haddad violated the False Claims Act.**

Because Relators fail to plausibly allege AKS and Stark-predicate violations, Relators have failed to plead the first (and required) element of their FCA claim—a false statement or fraudulent course of conduct.   Relators' FCA claim additionally fails because the Complaint does not plausibly allege the remaining elements of Relators' FCA claim: that Dr. Haddad knowingly caused the submission of false claims material to the Government's payment decisions.  *See Parikh*, 977 F. Supp. 2d at 662.

**a.      Relators fail to sufficiently plead that Dr. Haddad "knowingly" caused the submission of false claims.**

Relators must plead facts sufficient to claim that Dr. Haddad acted "knowingly."  *See* 31 U.S.C. § 3729(a)(1).  The FCA defines "knowingly" to mean that a person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." *Id.* § 3729(b)(1)(A)–(B). Although knowledge need only be alleged "generally," *Ruscher*, 2014 WL 2618158, at *5, Relators plead <u>no</u> allegations concerning Dr. Haddad's scienter.

**b.      Relators fails to sufficiently plead that Dr. Haddad *caused* the submission of false claims.**

As stated *supra*, pp. 12–14,  Relators have failed to allege the "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."  *Catholic Health Initiatives*, 312 F. Supp. 3d at 598–99.  But even if Relators had sufficiently pleaded that false claims were submitted to the federal government, the Complaint still does not plausibly allege that Dr. Haddad *caused* the submission of those false claims.

There are no allegations that Dr. Haddad's "approval" of the loans was a "substantial factor" in inducing DHR to submit false claims, or allegations that Dr. Haddad could reasonably anticipate that his role at the Bank, as an Advisory Board member and shareholder, would result in the submission of false claims for healthcare services to the federal government.  And, even accepting Relators' allegation that Dr. Haddad "approved" the loans as true (and it is not), there are still no allegations that Dr. Haddad reasonably could anticipate that approving Bank loans to DHR physicians would result in the submission of false claims.  *See United States v. Abbott Labs*, 2016 WL 80000, at *6 (N.D. Tex. Jan. 7, 2016) ("Defendants' conduct may be found to have caused [the FCA violation] if the conduct was (1) a substantial factor in inducing providers to submit claims . . . and (2) if the submission of claims . . . was reasonably foreseeable or anticipated as a natural consequence of Defendants' conduct.").  In short, Relators have failed to allege "a sufficient nexus between the conduct of [Dr. Haddad] and the ultimate presentation of the false claim."  *United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 681 (N.D. Miss. 2015).

### c.    Relators fail to sufficiently plead that any false claim was "material" to the Government's payment decisions.

Finally, Relators fail to allege any facts showing that any false claim was "material" to the Government's decision to pay the claim.  Relators nowhere allege that the Government declined to pay any DHR claim submitted over the past ten years since Relators' Original Complaint was filed.  A finding of materiality is defeated by the Government's continued payment of claims.  *United States ex rel. Lemon v. Nurses To Go, Inc.*, 924 F.3d 155, 162 (5th Cir. 2019) (explaining that when government pays a claim despite knowledge that certain requirements were violated, that is "very strong evidence that those requirements are not material").

Relators fail to plead a plausible claim for relief under the False Claims Act, and Counts I–III[7] should be dismissed.[8]

### B.     Relators Fail to Plead with Particularity Elements of a Conspiracy to Violate the FCA

Relators also assert an FCA conspiracy claim against Dr. Haddad, and thus must plead with particularity: "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by the government; and (2) at least one act performed in furtherance of that agreement." *United States ex rel. Dekort v. Integrated Coast Guard Systems*, 705 F. Supp. 2d 519, 548 (N.D. Tex. 2010) (citing *United States ex rel. Farmer v. City of Houston*, 523 F. 3d 333, 343 (5th Cir. 2008); *see also Grubbs*, 565 F.3d at 193 ("The particularity requirements of Rule 9(b) apply to the False Claims Act's conspiracy provision."). Relators do not expressly name Dr. Haddad in their conspiracy allegations, but broadly claim that the DHR defendants (a group Relators claim includes Dr. Haddad) conspired with the Bank "through a scheme whereby [DHR] and some of its physician investors directly or indirectly provided loans to DHR physician investors to invest in DHR." Dkt. 82, ¶ 279. Relators do not allege that Dr. Haddad entered into an agreement with either the Bank or DHR to provide improper loans,

---

[7] The Complaint fails to specify which causes of action apply to Dr. Haddad. Out of an abundance of caution and for purposes of this Motion only, Dr. Haddad assumes that Relators have asserted Counts I–III and V against him. (Count IV is an FCA retaliation claim that is inapplicable to Dr. Haddad).

[8] Relators' claims under the state-law analogue of the FCA, the TMFPA, fail for the same reasons that Relators' FCA claims fail, as Relators have alleged no different or additional facts in support of their TMFPA claim. Dkt. 82, ¶ 331. *See Catholic Health Initiatives*, 312 F. Supp. 3d at 606 ("Federal courts analyzing TMFPA claims alongside FCA claims have pinned their analysis of the former to their analysis of the latter."). This Court should dismiss Count V. Alternatively, if the Court dismisses Counts I–III, the Court should dismiss Count V because it will no longer have supplemental jurisdiction over that state law claim. *See id.* at 606–07 (after dismissing FCA claims, electing to dismiss TMFPA claim for lack of supplemental jurisdiction).

and they fail to allege even one act in furtherance of that agreement.   Additionally, because Relators' conspiracy claim is predicated on the same flawed theory as their predicate FCA claim against Dr. Haddad, it is also fatally flawed and must be dismissed. *United States ex rel. King v. Solvay S.A.*, 823 F. Supp. 2d 472, 516 (S.D. Tex. 2011), *vacated on other grounds*, 2012 WL 1067228 (S.D. Tex. Mar. 28, 2012) (dismissing conspiracy claim under Rules 9(b) and 12(b)(6) where claims upon which conspiracy was based were also dismissed under Rules 9(b) and 12(b)(6)).

## VII.   CONCLUSION

The Court should grant Defendant Dr. Victor Haddad's Motion to Dismiss with prejudice. Relators have insisted on keeping Dr. Haddad in this lawsuit despite being made aware that Dr. Haddad *is not and was not* a Bank employee, like Relators inaccurately claim in their Complaint.   Even setting aside Relators' egregious refusal to correct their factual misrepresentations by dismissing Dr. Haddad, Relators have failed to state a plausible claim for relief as required under *Twombly* or to plead with particularity as required by Rule 9(b).   Further amendment of the Complaint would be futile.   If Relators had *any* facts to allege in support of their claims, they would have done so by now, after ten years and one amendment.   Dismissal with prejudice under Rules 12(b)(6) and 9(b) is appropriate. *See, e.g.*, *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) ("The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss.").

Dated:  May 20, 2021     Respectfully Submitted,

**SMYSER KAPLAN & VESELKA, L.L.P.**

*/s/ Lee L. Kaplan*
&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;
Lee L. Kaplan
State Bar No. 11094400 (Fed. Bar No. 1840)
*Attorney-in-Charge*
Karima G. Maloney (Fed. Bar No. 649984)
State Bar No. 24041383
Samantha Jarvis (Fed Bar No. 2774222)
State Bar No. 24089238
Jacquelyn R. Rex (Fed. Bar No. 3160021)
State Bar No. 24098317
717 Texas Avenue, Suite 2800
Houston, Texas 77002
(713) 221-2300 (phone)
(713) 221-2320 (fax)
lkaplan@skv.com
kmaloney@skv.com
sjarvis@skv.com
jrex@skv.com

**Walsh McGurk Cordova Nixon**
Weldon G. "Beau" Nixon, Jr.
State Bar No. 24047278
Michael A. McGurk
State Bar No. 00797746
4900-B North 10th Street
McAllen, Texas  78504
(956) 632-5000 (phone)
(956) 630-5199 (fax)
bnixon@wmcnlaw.com
mmcgurk@wmcnlaw.com

**ATTORNEYS FOR DEFENDANTS LONE STAR NATIONAL BANK, LONE STAR NATIONAL BANCSHARES-TEXAS, INC., AND DR. VICTOR HADDAD**

## CERTIFICATE OF SERVICE

I hereby certify that, on May 20, 2021, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to all counsel of record.

*/s/ Lee L. Kaplan*
Lee L. Kaplan