United States District Court
Southern District of Texas
**ENTERED**
February 25, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONNA MENDEZ, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:11-CV-02565 |
| DOCTORS HOSPITAL AT RENAISSANCE, LTD., *et al.*, | § § § § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Pending before the Court is the defendants', Lone Star National Bank and Lone Star National Bancshares-Texas, Inc. (together, the "Bank"), motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) (Dkt. No. 111). Also before the Court is a motion to dismiss pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) filed by defendant Alonzo Cantu. (Dkt. No. 122) (together with the Bank, the "defendants"). The relator-plaintiffs, Donna Mendez and Selina Rushing (the relators), have filed respective responses to the defendants' motions (Dkt. No.'s 127 and 128), and the defendants have filed respective replies (Dkt. No.'s 137 and 136).

After reviewing the relators' amended pleading, the motions, the responses, and the applicable law, the Court determines that the defendants' motions should be **GRANTED**.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The relators sued the defendants, among many others, in this *qui tam* suit brought under the federal False Claims Act (FCA)[1] and Texas Medicaid Fraud Prevention Act (TMFPA).[2] The suit arises out of the allegedly unlawful activities of Doctors Hospital at Renaissance, Ltd. ("DHR"), which has operated numerous medical facilities in south Texas since 2003.[3]

Defendant Cantu is DHR's founder, primary investor, and an officer and director of DHR's general partner, defendant RGV MED, LLC.  Cantu is also the founder, shareholder, and board chairman of the Bank.  The Bank operates banking centers throughout the Rio Grande Valley of Texas and in San Antonio.  Cantu has, directly or indirectly, held a 32–41% ownership interest in the Bank for fifteen years.

The relators allege that, beginning in 2010, DHR, Cantu, and two other Bank shareholders "indirectly" provided loans to physicians through the Bank.  Cantu exerted control over Bank operations and personally participated in approving such loans.  The loans, which were made at below-market rates, financed physicians' investment in DHR, as well as construction of their medical offices and homes.  Physicians also allegedly rented medical offices from DHR at below-market rates.

---

[1] *See* 31 U.S.C. § 3729, *et seq.*

[2] *See* Tex. Hum. Res. Code Ann. §§ 36.001, *et seq.*

[3] The factual allegations in this section are set forth in the relators' First Amended Complaint. (Dkt. No. 82). A more detailed factual background regarding the allegations against DHR is set forth in the Court's separate memorandum entered on this same date. [Dkt. No.145].

According to the relators, Cantu used the Bank loans as leverage over DHR physicians to force them to aggressively refer patients to DHR. Cantu also allegedly used Bank funds to entertain physicians, such by flying them to professional basketball games in San Antonio. The Complaint also alleges other illegal compensation to physicians, including exclusive referrals of patients to certain physicians.

The relators originally filed this lawsuit suit under seal on July 12, 2011. The Court ordered the original complaint unsealed on December 17, 2020 (Dkt. No. 77), and the relators filed their First Amended Complaint (the "Complaint") on March 8, 2021. (Dkt. No. 82).[4] In the Complaint, the relators allege that the defendants violated the FCA by: knowingly causing the presentment of false claims for payment to the United States (Count I); knowingly making, using, or causing to be made or used false records or statements, either to get false claims paid or approved by the United States, or that were material to false claims (Count II); and entering into a conspiracy to violate the FCA (Count III). In Count V, the relators allege that the defendants violated the TMFPA by knowingly causing submission of false claims to the Texas Medicaid Program. The defendants have filed motions to dismiss all four counts.

### III.  CONTENTIONS OF THE PARTIES

As to each of the FCA claims, the defendants contend that the Complaint's allegations do not satisfy Rule 9(b)'s heightened pleading standard. To the extent the

---

[4] On October 1, 2018, the United States declined to intervene in this matter (Dkt. No. 67). On March 28, 2019, the United States informed the Court that it had completed its investigation into the relator's allegations (Dkt. No. 74). Texas elected to not intervene on May 11, 2021 (Dkt. No. 107).

relators assert the same theories under the TMFPA, their state law claims should be dismissed because the TMFPA is substantively the same as the federal FCA. Additionally, citing news articles and other purportedly public information, the defendants argue that the FCA's public disclosure bar precludes the relators' action under the federal statute. The Bank also submits that the FCA claims that are predicated on the federal Stark Law are time-barred. Cantu contends, alternatively, that dismissal is warranted because the relators did not serve him with the Complaint within the time required by Fed. R. Civ. P. 4(m).

The relators respond that they have adequately pled the defendants' violations of the FCA's substantive and conspiracy provisions, based on predicate violations of the federal Anti-Kickback Statute (AKS)[5] and the Stark Law.[6] They additionally argue that the TMFPA's requirements are not as demanding as the FCA in certain respects or, alternatively, that the relators' state law claim should survive for the same reasons as its FCA claims. Furthermore, the relators deny that the defendants have established their public disclosure defense. As to the defendants' limitations argument, the relators contend that the allegations in their amended pleading relates back to the date of their original complaint. The relators also assert that their delay in serving Cantu should be excused for good cause. Finally, the relators request leave to amend the Complaint in the event the Court determines that dismissal is appropriate.

---

[5] *See* 42 U.S.C. § 1320a–7b, *et seq.*

[6] *See* 42 U.S.C § 1395nn, *et seq*.

## IV. STANDARDS OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

" '[A] challenge under the FCA jurisdictional bar is necessarily intertwined with the merits' and is, therefore, properly treated as a motion for summary judgment." *U.S. ex rel. Reagan v. E. Texas Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004) (quoting *Laird*, 336 F.3d at 352). "A grant of summary judgment is proper if, viewing the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)). At the summary judgment stage, a court may not weigh the evidence or evaluate the credibility of witnesses, and all justifiable inferences will be made in the non-moving party's favor. *Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

Federal Rule of Civil Procedure Rule 12(b)(1) permits the dismissal of an action for the lack of subject matter jurisdiction. "If [a federal] court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." Fed. R. Civ. P. 12(h)(3). Because federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims. *See, e.g.*, *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). Therefore, the party seeking to invoke the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748

(5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *see also Stockman*, 138 F.3d at 151.

When evaluating jurisdiction, "a [federal] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *see also Vantage Trailers*, 567 F.3d at 748 (reasoning that "[i]n evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations."). In making its ruling, the court may rely on any of the following: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *MDPhysicians*, 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929 (2007). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 - 65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)).

In *Ashcroft v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, when

considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail. *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).[7]

## V.   ANALYSIS & DISCUSSION

### a.   The False Claims Act and the Public Disclosure Bar (Counts I–III)

The Court determines that the FCA's public disclosure bar requires dismissal of the relators' FCA claims and that, therefore, it need not address the parties' other arguments as to Counts I, II, or III.[8] The FCA bars certain private actions that involve publicly disclosed allegations. *See* 31 U.S.C. § 3730(e)(4) (West 2018). Prior to the enactment of the Patient Protection and Affordable Care Act ("ACA"), Pub.L. No. 111–148, 124 Stat. 119, a finding that an action was based on "publicly disclosed allegations or transactions," as defined in section 3730(e)(4), stripped the court of jurisdiction over the FCA claims:

> (4)(A) ***No court shall have jurisdiction over an action*** under this section ***based upon the public disclosure of allegations or transactions*** in a criminal, civil, or administrative hearing, in a congressional, ***administrative***, or Government Accounting Office ***report***, hearing, audit, or investigation, or

---

[7] Because the Court resolves the defendants' motions through application of the FCA's public disclosure bar, application of the Rule 9(b) pleading standard is unnecessary.

[8] The Court is of the opinion that the relators' delayed service of the Complaint on Cantu does not, by itself, warrant dismissal. The relators served Cantu on May 12, 2021, 56 days after the 90-day period required by Fed. R. Civ. P. 4(m) expired. However "the plain language of Rule 4(m) broadens a district court's discretion by allowing it to extend the time for service even when a plaintiff fails to show good cause." *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996). While the relators have not shown good cause for the delay in service, dismissal is not warranted here, given the actual length of delay in service, the lack of aggravating factors, and the fact that limitations would preclude the relators from refiling.

>   from ***the news media***, ***unless*** the action is brought by the Attorney General or ***the person bringing the action is an original source*** of information.

31 U.S.C. § 3730(e)(4)(A)–(B) (West 2006) (emphasis added). The ACA's amendments to the statute, effective July 22, 2010, replaced section 3730(e)(4)'s then-existing language with the following, as relevant here:

>   (4)(A) ***The court shall dismiss an action or claim*** under this section, unless opposed by the Government, ***if substantially the same allegations or transactions*** as alleged in the action or claim ***were publicly disclosed*** (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) ***in a*** congressional, Government Accountability Office, or ***other Federal report***, hearing, audit, or investigation; ***or*** (iii) ***from the news media***, ***unless*** the action is brought by the Attorney General or ***the person bringing the action is an original source*** of the information.

31 U.S.C. § 3730(e)(4)(A)–(B) (West 2018) (emphasis added). While not specific in terms of their timing, the relators' allegations of fraud against the defendants extend from at least the beginning of 2010. Thus, as to allegations or transactions pre-dating July 22, 2010, the jurisdictional public-disclosure bar applies. The non-jurisdictional public-disclosure bar applies to allegations that post-date July 22, 2010.

Under the pre-ACA provision, the Court must determine: "(1) whether there has been a 'public disclosure' of allegations or transactions, (2) whether the qui tam action is 'based upon' such publicly disclosed allegations, and (3) if so, whether the relator is the 'original source' of the information." *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011). Under the post-ACA provision, the Court asks at the second step whether the publicly disclosed allegations or transactions are "substantially the same allegations or transactions as alleged in the action." *See* 31 U.S.C. § 3730(e)(4)(A) (West 2018). Because a challenge under the public disclosure bar "is necessarily intertwined with

the merits[,]" it "is, therefore, properly treated as a motion for summary judgment." *Jamison*, 649 F.3d at 327. The same burden-shifting framework applies for both versions of the public disclosure bar. *Id.*; *United States ex rel. Hendrickson v. Bank of America, N.A.*, 343 F. Supp. 3d 610, 623 (N.D. Tex. 2018), *aff'd*, 779 F. App'x 250 (5th Cir. 2019).

Under this framework, "the defendants must first point to documents plausibly containing allegations or transactions on which [the relators'] complaint is based." *Id.* In order to survive summary judgment, the relators must then produce evidence sufficient to show that there is a genuine issue of material fact as to whether that action was "based on" the public disclosures, or whether the relators' allegations are "substantially the same" as those publicly disclosed. *Jamison*, 649 F.3d at 327; *Hendrickson*, 343 F. Supp. 3d at 623. The Fifth Circuit has routinely combined the analysis' first step (whether there has been public disclosure of the allegations or transactions) and its second step (whether the action is based upon or substantially similar to publicly disclosed information). *Jamison*, 649 F.3d at 327.

The Court determines that, of the documents submitted by the defendants, only the five news articles could plausibly support a public disclosure defense under either version of the FCA. The news articles, all pre-dating the relators' lawsuit, qualify as "news media" under both the pre-ACA and post-ACA provisions. *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408, 131 S.Ct. 1885, 179 L.Ed.2d 825 (2011).[9] Together, these

---

[9] The defendants also submit a screenshot of the Bank's website from 2011. This document does not qualify as "news media" or any other category of public disclosure under the FCA. Additionally, the defendants attach publicly available copies of financing statements filed by the Bank with the Texas Secretary of State, asserting that such documents qualify as "reports" under section 3730(e)(4). However, the Court is of the

articles made public no later than December 2009 that Cantu was a founder, investor, and board member of DHR, as well as the "chairman of a bank that made loans to DHR investors." One of the articles also stated that DHR had a reputation for aggressively recruiting high-volume physicians to become investors and refer patients to DHR.

In the Complaint, the relators allege that Cantu and DHR, through the Bank, made loans and provided other compensation to its contracting physicians, in violation of the AKS and the Stark Law. The defendants thus allegedly caused DHR to submit false claims for payment, or to make or use false records or statements related to such claims, because the claims contained false certifications of compliance with the federal AKS and the federal Stark Law.

Combining the first and second prongs of the analysis, the Court finds that the relators' allegations are both "based upon" and "substantially similar to" those public disclosed in the 2009 news articles. Importantly, "[a]n FCA qui tam action even partly based upon public allegations or transactions is nonetheless 'based upon' such allegations or transaction[s]." *U.S. ex rel. Reagan v. E. Texas Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 176 (5th Cir. 2004). The news articles contain the same basic factual allegations regarding Cantu and the Bank as those pled by the relators in the Complaint. The

---

opinion that paragraph (e)(4) refers to reports made by federal agencies, not state agencies. *Cf. United States ex rel. Colquitt v. Abbott Labs*, 858 F.3d 365, 373–74 (5th Cir. 2017) (holding that summaries of documents that were submitted to the FDA and that the FDA made publicly available prior to the qui tam suit's filing constituted public disclosures). Finally, the defendants submit what they purport to be a copy of a report filed with the Federal Reserve Bank of Dallas in 2010. However, nothing on the face of the report indicates that it was actually filed with the Federal Reserve Bank, and a search of the website cited in the Complaint did not reveal a publicly available copy of the report.

Complaint adds only that: Cantu held an ownership interest in the Bank, in addition to the board chairmanship; Cantu was involved in the Bank's lending operations; the physicians used the loans for purposes other than just investment in DHR; and the Bank funded entertainment and subsidized medical office rent for the physicians.

These allegations do not suggest any violations of the AKS, the Stark Law, or, by extension, the FCA that are substantively different from those suggested by publicly disclosed information. *United States ex rel. Colquitt v. Abbott Labs*, 858 F.3d 365, 373–74 (5th Cir. 2017) (holding that "contributing more of the same does not change the public character of a relator's allegations," and that a relator cannot avoid the public disclosure bar "by adding other claims that are substantively identical to those previously disclosed" (internal citation omitted)).[10]  Additionally, concerning the third step of the analysis, the relators offer no evidence, or even argument, that they were the original source of the publicly disclosed information.

Based on the foregoing, the defendants have established that the FCA's public disclosure bar precludes the relators' FCA claims. Accordingly, Counts I, II, and III against the defendants should be dismissed. Furthermore, the Court denies the relators' request for leave to amend the Complaint concerning Cantu and the Bank. In doing so, the Court notes that the relators have already amended their original pleading, almost ten years after they filed their lawsuit. In their amended pleading, the relators offer no facts to

---

[10] Further, the relators' other allegations concerning "monopolies" offered to DHR physicians and vendors at best implicate only DHR, not the defendants.

suggest that they have personal knowledge of the Bank's operations, or of Cantu's involvement in such operations, as might provide factual bases for their claims in addition to those publicly available. For these reasons, the Court determines that the FCA claims should be dismissed with prejudice.

        **b.**        **The Texas Medicaid Fraud Prevention Act (TMFPA) (Count V)**

The relators' remaining state law (TMFPA) claim against the defendants is before the Court based solely on supplemental jurisdiction. A district court can decline to exercise that jurisdiction if, *inter alia*, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Having dismissed the relators' federal claims, the Court determines that the TMFPA claim should be dismissed without prejudice. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. However, the dismissal of the pendent claims should expressly be without prejudice so that the plaintiff may refile his claims in the appropriate state court.").

## VI.    CONCLUSION

Based on the foregoing analysis and discussion, the defendants' motion to dismiss is **GRANTED**.

It is, therefore, ORDERED that:

1. Counts I, II, and III of the relators' First Amended Complaint against defendants Lone Star National Bank, Lone Star National Bancshares-Texas, Inc., and Alonzo Cantu are DISMISSED WITH PREJUDICE.

2. Count V of the relators' First Amended Complaint against defendants Lone Star National Bank, Lone Star National Bancshares-Texas, Inc., and Alonzo Cantu is DISMISSED WITHOUT PREJUDICE. The relator-plaintiffs are granted 30 days to file any state law claim that they may have, subject to state rules.

It is so **ORDERED**.

SIGNED on February 25, 2022, at Houston, Texas.

_____
Kenneth M. Hoyt
United States District Judge