# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
|    *ex rel.* Donna Mendez & Selina Rushing, § | |
|    and Selina Rushing, Individually; § | |
| § | |
| STATE OF TEXAS *ex rel.* § | NO. 4:11-CV-02565 |
| Donna Mendez & Selina Rushing, § | |
| § | Judge Kenneth M. Hoyt |
|    Plaintiffs, § | |
| § | |
| v. § | |
| § | |
| Doctors Hospital at Renaissance, Ltd., *et al.* § | |
| § | |
|    Defendants. § | |

**PLAINTIFFS DONNA MENDEZ AND SELINA RUSHING'S
RESPONSE TO DEFENDANT DOCTORS HOSPITAL AT RENAISSANCE, LTD. AND
RGV MED, LLC'S MOTION TO DISMISS**

Relators Donna Mendez and Selina Rushing respectfully submit their Response to Defendants Doctors Hospital at Renaissance and RGV Med, LLC's Motion to Dismiss and, in support would show the following:

## I. NATURE AND STATE OF PROCEEDING

Relators filed this *qui tam* action under seal on July 12, 2011, asserting claims under the False Claims Act, 31 U.S.C. § 3729 ("FCA"), and the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. §§ 36.001, *et seq.* ("TMFPA")(Dkt. 1). The Original Complaint remained under seal while the Department of Justice, the United States Attorney's Office for the Southern District of Texas, and the State of Texas investigated Relators' claims. On October 1, 2018, the United States filed a Notice of Non- Intervention, but the case was not unsealed at that time. (Dkt. 67). In December 2020, United States again declined to intervene and the Original Complaint was unsealed on December 17, 2020. (Dkt. 77). On March 8, 2021, Relators filed their First Amended Complaint. (Dkt. 82)(the "FAC"). On May 11, 2021, the State of Texas filed its Notice of Election to Decline Intervention. (Dkt. 107). Since filing their Original Complaint, Relators have filed notices of dismissal of many of the original defendants. (Dkts. 80, 116). The remaining Defendants are Doctors Hospital at Renaissance and RGV Med, LLC (collectively "DHR").

On May 10, 2021, DHR filed a Motion to Dismiss for Failure to State a Claim. (Dkt. 106). On February 24, 2022, the Court entered an order on DHR's motion granting in part and denying in part, but providing leave for relators to amend their Complaint. (Dkt. 145). On March 23, 2022, Relators filed their Second Amended Complaint (Dkt. 151)(the "SAC"). On May 6, 2022, DHR again filed a Motion to Dismiss for Failure to State a Claim. (Dkt. 158).

## II.  STATEMENT OF ISSUES TO BE RULED UPON AND STANDARD OF REVIEW

In the SAC, Relators asserts four causes of action against Defendants for:

Count I:   False presentment of claims to the government, under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1) (former); 31 U.S.C. § 3729(a)(1)(A) (current) 31 § 3729(a)(1)(A)

Count II:   Making false records or statements to the government, under the FCA, 31 U.S.C. § 3729(a)(2) (former); 31 U.S.C. § 3729(a)(1)(B) (current))

Court III:   Retaliatory discharge under the FCA, 31 U.S.C. § 3730(h), asserted by Relator Rushing against DHR

Count IV:   Violations of the TMFPA, Tex. Hum. Res. Code Ann. §§ 36.001, *et seq*.

The issues to be ruled upon at this point are:

**A.   Whether the Relators have met their burden under Fed. R. Civ. P. 8(a) and Fed. R. Civ. P. 9(b), to adequately plead their FCA causes of action against Defendants with regard to the Medical Necessity and Unqualified Care Theories.**

Standard of Review:  Rule 8(a) provides that a Complaint "must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."

In addition, "a complaint filed under the FCA must meet the heightened pleading standard of Rule 9(b)." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185-86 (5th Cir. 2009) ("Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading."). Rule 9(b) provides that "[i[n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

iii

**B.     Whether the Relators have met their burden under Fed. R. Civ. P. 8(a) and Fed. R. Civ. P. 9(b), to adequately plead their FCA causes of action against Defendants with regard to the Admission Status Theory.**

Standard of review.  Rules 8(a) and 9(b)'s pleading standard is identified above.

**C.     Whether Relator Rushing has met her burden under Fed. R. Civ. P. 8(a) to adequately plead her retaliation claim.**

Standard of review.  Rules 8(a)'s pleading standard is identified above.

**D.     Whether Relators have met their burden under Fed. R. Civ. P. 8(a) and Fed. R. Civ. P. 9(b) to adequately plead their claims under the TMFPA.**

Standard of review.  Rules 8(a) and 9(b)'s pleading standard is identified above.  As noted below and in prior filings, Relators and the State of Texas dispute that claims under the TMFPA are identical to claims under the FCA.  The relevant distinctions are discussed below.

**E.     In the alternative, if the Court determines that Relators' Complaint is deficient, whether the Court will grant Relators leave to amend their Complaint.**

Standard of Review.  Leave to amend is within the trial court's discretion but should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2).  The language of the rule "evinces a bias in favor of granting leave to amend." *Lyn-Lea Travel Corp. v. Am. Airlines, v. Harry L. Laws Co., Inc.*, 283 F.3d 282, 286 (5th Cir. 2002).

The appeals court reviews a district court's denial of a motion for leave to file an amended complaint under an abuse of discretion standard. *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010). When a district court's denial for leave to amend is based on futility, however, the appeals court will apply a *de novo* standard of review. *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010).

## III. SUMMARY OF ARGUMENT

Relators have adequately pled – in great detail - that DHR caused false statements to be submitted to and engaged in fraudulent conduct towards the government, that DHR did so even after Relators repeatedly reported the fraud to DHR agents and officers, that the fraud was material and caused the government to pay DHR money. DHR has sought to backdoor an additional motion for reconsideration, by lodging redundant arguments that the Court has already dismissed twice.

Relator Rushing has adequately pled that she "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" in response to the protected activity of reporting DHR's fraud and illegal practices to DHR management. 31 U.S.C. § 3730(h)(1).

Relators have adequately pled their TMFPA claims by pleading analogous FCA claims with more stringent pleading requirements.

In the alternative, if the Court deems Relators' SAC as deficient in any way, Relators should be allowed leave to amend their complaint to meet any deficiencies.

IV.   **ARGUMENT AND AUTHORITIES**

  A.   **Relators FCA Claims with regard to the Medical Necessity and Unqualified Care Theories.**

In the present motion, DHR contends that it cannot be liable for the action of doctors at DHR facilities, or for the claims they presented for reimbursement to them, and points out that the conduct of individual Doctors is highlighted in Relators factual pleadings of their SAC. This redundant and misleading argument misses the point that DHR officers and employees had knowledge imputable to DHR under the FCA. The conduct of the doctors must be highlighted in order to show DHR agents had the requisite scienter described in the FCA. Relators do not allege that DHR is vicariously liable for the actions of doctors simply because it owns the facilities, but that, as *manager and operator* of its facilities, DHR is directly liable for causing the facilities to submit false claims. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 378 (5th Cir. 2004) ("[Defendant] need not be the one who actually submitted the claim forms in order to be liable.'").

The Fifth Circuit has summarized the FCA inquiry as: "(1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e. that involved a claim)." *United States ex rel. Harman v. Trinity Inds. Inc.*, 872 F.3d 645, 653-54 (5th Cir. 2017) (quoting *United States ex rel. Longhi v. Lithium Power Tech., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009)). Regarding the applicable pleading rules, the Fifth Circuit has found that, given the remedial nature of the FCA and the lack of a reliance and damages requirement, the Rule

1

9(b) standard is relaxed when considering such a claim. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189 (5th Cir. 2009).

The Court properly found in its February 24 Order that "Rule 9(b)'s particularity requirement compels that 'the who, what, when, where, and how [] be laid out'" (Dkt. 145 at 11). However, DHR attempts to take this standard further than any court has, and with no authority interprets each of these pleading elements as:

> the "who" (the patients who allegedly received the treatment); the "what" (the particular circumstances that make the treatment for a patient allegedly unnecessary or otherwise improper); the "when" (the dates on which the treatment allegedly was provided); or the "how" (allegations that the Government was actually billed for the treatment as opposed to a private payor).

(Dkt. 158 at 15). Nowhere but in the Defendant's conclusory assertions are these pleading requirements placed on Relators, but DHR applies this standard across the breadth of their motion, rendering its opinion on the Relators' pleadings specious and misguided.

In pleading the falsity or fraudulence of a claim, a plaintiff need not provide the "exact dollar amounts, billing numbers, or dates," as such a requirement would be "one small step shy of requiring production of actual documentation with the complaint…, significantly more than any federal pleading rule contemplated." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). The rule requires only simple, concise, and direct circumstances constituting fraud which, when taken as true, must make relief plausible, not merely conceivable. *Id.* at 185-86.

In pleading the requisite scienter, the FCA requires that Defendants acted "knowingly." 31 U.S.C. § 3729(a). The FCA defines "knowingly" to include "actual knowledge," "deliberate ignorance," and "reckless disregard" of the truth. 31 U.S.C. § 3729(b)(1). Relators may allege

2

knowledge generally, Fed. R. Civ. P. 9(b), and thus need only provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). "A relator must show that the defendant's allegedly false statements could have influenced the government's payment decision or had the potential to do so, not that the false statements must have actually done so." *Longhi*, 575 F.3d at 467 ("All that is required under the test for materiality, therefore, is that the false of fraudulent statements have the potential to influence the government's decisions."). An FCA materiality inquiry "looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016).

The Supreme Court recently elaborated on the factors that lower courts should consider in determining materiality under the FCA. *United States ex rel. Lemon v. Nurses to Go, Inc.*, 924 F.3d 155, 159 (5th Cir. 2019) (citing *Escobar*, 136 S. Ct. at 2003). The *Escobar* Court instructs courts to consider whether: "(1) the alleged violations are conditions of payment;" (2) "the Government would deny [d]efendants' reimbursements payments if it had known of these alleged violations;" and (3) noncompliance is minor or substantial. *Escobar*, 136 S. Ct. at 2003. No one factor is dispositive, and the analysis is holistic. *Lemon*, 924 F.3d at 161.

1. **<u>Relators' Amended Pleadings</u>**

The Court properly found that an FCA claim

"may nevertheless survive by alleging particular details of a scheme to submit false claims *paired with* reliable indicia that lead to a strong inference that claims were actually submitted."

3

(Dkt. 145 at 12) citing *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189 (5th Cir. 2009). And further found that Relators' pleading regarding the admission status theory was sufficient to infer that those fraudulent claims were actually submitted by DHR when Relators pled that their supervisors were regularly put on notice of violative conduct and not only did nothing to stop it, but ordered them to continue the practice.

In its ruling on the Medical Necessity and Unqualified Care theories, The Court said that Relators "must plead with particularity which DHR officers or employees had knowledge that is imputable to DHR under the FCA." and that the FAC was deficient because the "allegations concerning unnecessary hospitalizations in the pediatric unit, the Women's Hospital, and the Behavioral Hospital do not specify when the fraud occurred." (Dkt. 145 at 12). In their SAC, Relators met and exceeded these standards by providing more granular factual detail with specific regard to the deficiencies outlined by the Court's Order.

In ¶¶ 148-153 and 164-167 of the SAC, Relators lay out with specific dates and date ranges limited to a month, situations where patients were treated without regard for medical necessity, in furtherance of a fraudulent course of conduct, and that agents of DHR were put on notice. Relators allege that the agents of DHR not only knew of the fraudulent conduct, but in many cases directed it, creating what Relators sufficiently plead as a fraudulent scheme, put in place by those appointed to act on behalf of DHR. In ¶¶ 173-174 of the SAC, Relators give specific dates of fraudulent activity that took place in the Women's Hospital, and lay out the specific DHR agents put on notice via email and their subsequent inaction to cease the violative behavior. ¶ 191 alleges, with a specific date, that some of the facts giving rise to the unqualified care theory were relayed directly to Lulu Rizdale, and Assistant Director Joaquin Nava by Relator Mendez, only to be met with

4

comments evincing they already knew of these practices and intended to let them continue. Similarly, ¶ 185 provides more factual detail for violative conduct in the behavioral unit.

Anyone of these amendments meets the standard presented by the Court in its February 24 Order, where it dismissed these claims without prejudice, and graciously allowed these amendments. There is no doubt that by the letter of the law and the Court's ruling, Relators have pled the elements of a their FCA presentment claim and false statement/certification claim under the medical necessity and unqualified care theories.

Relators have met their burden at this stage of alleging that Defendants made false statements and engaged in fraudulent conduct, with the required scienter; the actions were "material" and the actions caused the government to pay out money or to forfeit moneys due to Defendants' conduct. As such, DHR's motion should be denied.

**B.     Relators FCA Claims with regard to the Admissions Status Theory.**

DHR argued to have Relators FCA claims dismissed with regard to the admissions status theory in their Motion to Dismiss Relators' FAC. An argument which the Court explicitly rejected in its ruling on that Motion, finding that Relators had sufficiently pled "reliable indicia that lead to a strong inference that claims were actually submitted". (Dkt. 145). DHR urged this argument again in its Motion for Reconsideration. (Dkt. 149). In its Order, ruling on the Motion for Reconsideration, the Court "decline[d] to revisit its prior ruling on the relators' Admission Status Theory". (Dkt. 156). In an effort that serves to only waste the Court's time and resources, DHR again re-urges this settled matter in its Motion to Dismiss Relators SAC currently before the Court. The present motion acknowledges that the Court explicitly found sufficiency in Relators' pleading, but in the very next sentence, asserts the Court incorrectly applied the law in its ruling. Asserting

that Relators failed to "allege: '(1) . . . a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material . . . .'" (Dkt. 158 at 7).

Even if the Court was wrong, as DHR suggests, DHR ignores the fact that Relators did plead facts to support this standard in both their FAC. Additionally, the Court summarized these very facts in its February 24 Order:

> Here, the relators allege that, in separate incidents, Rushing reported to her supervisors that either she or one of her colleagues were being told to assign a particular admissions status to patients without consulting DHR physicians. In October 2009, after she reported this practice to Karen McAlister, McAlister told her to continue the practice, despite Rushing's objections that it violated applicable Medicare and Medicaid laws. Rushing also alleges that she made as similar report to supervisor Lulu Rizalde in October 2010 and that no remedial action was taken by DHR as a result.

(Dkt. 145 at 14). The (1) "fraudulent course of conduct" was pled as the altering of admission status without physician consultation, the (2) "requisite scienter" was pled as DHR employers ordering the continuing of the fraudulent practice without remedial action, and the (3) "materiality" is evident by the fact that these statuses are central to the government's payment decisions. Relators included these same allegations in their SAC, along with additional more granular factual detail regarding these claims in their amendments. DHR's contention that Relators must explicitly plead that the government would have refused to pay under different circumstances, or that they personally witnessed the Defendant certifying compliance are both a red herring. Per the Court's order, Relators plead their admission status theory with sufficiency in their FAC, and then went even further in their SAC. As such, DHR's motion should be denied.

### C. Relator Rushing's Retaliation Claim.

In what appears to be a recurring pattern, DHR is again rejecting the Court's authority and

reasserting an argument substantively identical to one which the Court has already dismissed. In that regard, Relator Rushing incorporates her response to DHR's prior Motion to Dismiss her retaliation claim. In the present motion, DHR asserts that Relator Rushing's retaliation claim fails due to her not engaging in "protected activity" as defined by the FCA. DHR cites multiple cases wherein the holdings establish that an employee investigating or complaining about an employer for violations of the FCA are protected activity, and Relator Rushing readily admits that an employee's complaints regarding an employer's FCA violation are a key element of and FCA retaliation claim. However, Relator Rushing disagrees with DHR's assertion that DHR's conduct was not an FCA violation, and therefore Relator could not have been complaining about such a violation. There is no law to support this assertion, and in fact, each of their cited cases is distinguishable with regard to the complaints not being made about FCA violations. In *Bouknight,* relator alleged misappropriation of federal funds, but it was found that the complaints she asserted as protected activity, only discussed misappropriation of state funds. In *Patton*, relator asserted that his construction manager defrauded the government in pursuit of contract money, but it was found that his internal complaints were generally aimed at unsafe worksite practices.

In the present case, Relator Rushing has pled specifically that she complained of practices that violated Medicare rules and regulations and violated the FCA, and she was punished and terminated in short order. This Court has already settled this matter, DHR's redundant motion to dismiss this claim is without merit or respect for judicial efficiency. As such, it should be denied.

D. **Relators TMFPA Claims.**

Throughout Count IV of the Causes of Action section of the SAC. (Dkt. 151 at 95), Relators lay out specifically what provisions of the TMFPA were violated by DHR, and specifically point

7

to the same facts and allegations which predicated the upheld FCA claims. Defendants contend that the TMFPA is effectively the same as the FCA and thus the same pleading standards should apply. That is incorrect. Relators adopt and incorporate the Statement of Interest filed by the State of Texas. (Dkt. 125). Relators agree that the TMFPA 1) does not require that a defendant submit a claim to incur liability; 2) does not require proof that an unlawful act was material to payment; and 3) does not contain any "willful" requirements. (Dkt. 125, at pp. 4-9). Fewer requirements necessarily mean that the TMFPA has less stringent pleading standard, but even if it didn't Relators have already satisfied the more stringent standard. Relators have met their burden in pleading their FCA claims, and in doing so, have included all the pleading necessary to sufficiently plead TMFPA violations as well. Defendant's motion with respect to the TMFPA claims should be denied.

### E. Relators Request for Leave to Re-plead.

Leave to amend is within the trial court's discretion but should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Relators have amended their complaint only once in response to a dismissal on the grounds of pleading sufficiency. Courts recognize the pleading standard in 9(b) is heightened and have afforded multiple bites at the metaphorical apple in response; *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000) (noting that a court may dismiss a claim for failing to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded **repeated** opportunities to do so.") *emphasis added*

If the Court identifies any deficiencies in Relators' pleading, they respectfully request leave to amend their Complaint to address any identified deficiencies.

8

WHEREFORE, Relators respectfully request that the Court deny Defendant's Motion to Dismiss, or alternatively, for leave to amend their Complaint, and for such other relief to which they are entitled.

Respectfully submitted,

*/s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
S.D. of Tex. No. 22679
tbuzbee@txattorneys.com
The Buzbee Law Firm
JP Morgan Chase Tower
600 Travis St, Suite 7300
Houston, Texas 77002
Tel: (713) 223-5393
Fax: (713) 223-5909

**OF COUNSEL:**
David L. Bergen
Texas Bar No. 24097371
S.D. of Tex. No. 2858355
dbergen@txattorneys.com
The Buzbee Law Firm
JP Morgan Chase Tower
600 Travis St, Suite 7300
Houston, Texas 77002
Tel: (713) 223-5393
Fax: (713) 223-5909

*/s/ Joel Androphy (\* w/permission)*
Joel M. Androphy (Tex. Bar No. 01254700)
Rebecca L. Gibson (Tex. Bar No. 24092418)
Berg & Androphy
3704 Travis Street
Houston, Texas 77002
Email: jandrophy@bafirm.com
Email: rgibson@bafirm.com
Telephone (713) 529-5622
Facsimile (713) 529-3785

*/s/ Ricardo A. Barrera (\* w/permission)*
Ricardo A. Barrera (Tex. Bar No. 24071959)
The Barrera Law Firm, P.C.
1314 East Harrison Street
Harlingen, Texas 78550
1005 Marquette Ave NW
Email: ricardo.a.barrera@gmail.com
Telephone (956) 428-2822
Facsimile: (956) 428-2842

**ATTORNEYS FOR PLAINTIFFS**

9

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the above was served via the Court's CM/ECF system on June 3, 2022.

*/s/ Anthony G. Buzbee*
Anthony G. Buzbee
